## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>     v.<br><br>ODYSSEY INVESTMENT PARTNERS<br>FUND V, LP,<br><br>COMMUNICATIONS & POWER<br>INDUSTRIES LLC,<br><br>and<br><br>GENERAL DYNAMICS CORPORATION,<br><br>        Defendants. | Case No. 1:20-cv-01416 (TFH) |

## FINAL JUDGMENT

WHEREAS, Plaintiff, United States of America, filed its Complaint on May 28, 2020, the United States and Defendants, Odyssey Investment Partners Fund V, LP ("Odyssey"), Communications & Power Industries LLC ("CPI"), and General Dynamics Corporation ("General Dynamics"), by their respective attorneys, have consented to entry of this Final Judgment without trial or adjudication of any issue of fact or law and without this Final Judgment constituting any evidence against or admission by a party regarding any issue of fact or law;

AND WHEREAS, Defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture of certain rights or assets by Defendants to assure that competition is not substantially lessened;

AND WHEREAS, Defendants agree to make a divestiture for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, Defendants represent that the divestiture and other relief required by this Final Judgment can and will be made and that Defendants will not later raise a claim of hardship or difficulty as grounds for asking the Court to modify any provision of this Final Judgment;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED, AND DECREED:

## I.   JURISDICTION

The Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against Defendants under Section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

## II.   DEFINITIONS

As used in this Final Judgment:

A.     "Acquirer" means the entity to whom Defendants divest the Divestiture Assets.

B.     "Odyssey" means Defendant Odyssey Investment Partners Fund V, LP, a Delaware limited partnership with its headquarters in New York, New York, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, including Odyssey Investment Partners, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

C.      "Odyssey Investment Partners" means Odyssey Investment Partners, LLC, an affiliate of Odyssey and a Delaware limited liability company with its headquarters in New York, New York, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents and employees.

D.      "CPI" means Defendant Communications & Power Industries LLC, a Delaware limited liability company with its headquarters in Palo Alto, California, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.  As used in this definition, the terms subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures refer to any person or entity in which CPI holds twenty-five (25) percent or more total ownership or control.

E.      "General Dynamics" means Defendant General Dynamics Corporation, a Delaware corporation with its headquarters in Reston, Virginia, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

F.      "GD SATCOM" means General Dynamics SATCOM Technologies, Inc., a Delaware corporation with its headquarters in Fairfax, Virginia, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.  GD SATCOM is a wholly-owned subsidiary of General Dynamics.

G.      "ASC Signal" means CPI ASC Signal Division Inc., a Delaware corporation with its headquarters in Plano, Texas, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.  ASC Signal is a wholly-owned subsidiary of CPI.

3

H.      "Divestiture Assets" means ASC Signal, including but not limited to:

1.      The support facility located at 1120 Jupiter Road, Suite 102, Plano, Texas 75074;

2.      The manufacturing facility located at 606 Beech Street West, Whitby, Ontario, Canada L1N 0E7;

3.      The testing facility located at 9860 Heron Rd., Ashburn, Ontario, Canada L0B 1A0;

4.      The testing facility located at 1411 CR 2740, Caddo Mills, Texas 75135;

5.      All tangible assets related to or used in connection with ASC Signal, including, but not limited to:  research and development activities; all manufacturing equipment, tooling and fixed assets, personal property, inventory, office furniture, materials, supplies, and other tangible property; all licenses, permits, certifications, and authorizations issued by any governmental organization; all contracts, teaming arrangements, agreements, leases, commitments, certifications, and understandings, including supply agreements and development and production contracts; all customer lists, contracts, accounts, and credit records; all repair and performance records; and all other records; and

6.      All intangible assets related to or used in connection with ASC Signal, including, but not limited to:  all patents; licenses and sublicenses; intellectual property; copyrights; trademarks, trade names, service marks, and service names; technical information; computer software (including software developed by third parties), and related documentation; customer relationships, agreements, and contracts; know-how; trade secrets; drawings; blueprints; designs; design protocols; specifications for materials; specifications for parts and devices; safety procedures for the handling of materials and substances; quality assurance and

4

control procedures; design tools and simulation capability; all manuals and technical information ASC Signal provides to its own employees, customers, suppliers, agents, or licensees; and all research data concerning historic and current research and development efforts, including, but not limited to, designs of experiments, and the results of successful and unsuccessful designs and experiments.

I.      "Relevant Personnel" means all full-time, part-time, or contract employees of (i) ASC Signal, and (ii) all additional full-time, part-time, or contract employees of CPI, wherever located, primarily involved in the design, manufacture, or sale of geostationary antennas larger than four meters in diameter, including, but not limited to, the reflector, pedestal, and tracking and control mechanisms used in antennas.  Notwithstanding the foregoing, Relevant Personnel does not include employees of CPI primarily engaged in human resources, legal, or other general or administrative support functions.

J.      "Regulatory Approvals" means (i) any approvals or clearances pursuant to filings with the Committee on Foreign Investment in the United States ("CFIUS"), or under antitrust or competition laws required for the Transaction to proceed; and (ii) any approvals or clearances pursuant to filings with CFIUS, or under antitrust, competition, or other U.S. or international laws required for Acquirer's acquisition of the Divestiture Assets to proceed.

K.      "Transaction" means the proposed acquisition of GD SATCOM by CPI.

### III.   APPLICABILITY

A.      This Final Judgment applies to Odyssey, CPI, and General Dynamics, as defined above, and all other persons, in active concert or participation with any Defendant, who receive actual notice of this Final Judgment.

B.      If, prior to complying with Section IV and Section V of this Final Judgment, CPI sells or otherwise disposes of all or substantially all of its assets or of lesser business units that include the Divestiture Assets, CPI must require the purchaser to be bound by the provisions of this Final Judgment.  CPI need not obtain such an agreement from Acquirer.

## IV.   <u>DIVESTITURE</u>

A.      CPI is ordered and directed, within the later of sixty (60) calendar days after the Court's entry of the Hold Separate Stipulation and Order in this matter, or thirty (30) calendar days after Regulatory Approvals have been received, to divest the Divestiture Assets in a manner consistent with this Final Judgment to an Acquirer acceptable to the United States, in its sole discretion.  The United States, in its sole discretion, may agree to one or more extensions of this time period not to exceed ninety (90) calendar days in total, and will notify the Court of any extensions.  CPI agrees to use its best efforts to divest the Divestiture Assets as expeditiously as possible.

B.      In accomplishing the divestiture ordered by this Final Judgment, CPI promptly must make known, by usual and customary means, the availability of the Divestiture Assets.  CPI must inform any person making an inquiry regarding a possible purchase of the Divestiture Assets that the Divestiture Assets are being divested in accordance with this Final Judgment and must provide that person with a copy of this Final Judgment.  CPI must offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all information and documents relating to the Divestiture Assets customarily provided in a due-diligence process; provided, however, that CPI need not provide information or documents subject to the attorney-client privilege or work-product doctrine.  CPI must make this information available to the United States at the same time that the information is made available to any other person.

6

C.    CPI must cooperate with and assist Acquirer in identifying and hiring all Relevant Personnel, including:

1.    Within ten (10) business days following the filing of the Complaint in this matter, CPI must identify all Relevant Personnel to Acquirer and the United States, including by providing organization charts covering all Relevant Personnel.

2.    Within ten (10) business days following receipt of a request by Acquirer or the United States, CPI must provide to Acquirer and the United States the following additional information related to Relevant Personnel:  name; job title; current salary and benefits including most recent bonus paid, aggregate annual compensation, current target or guaranteed bonus, if any, and any other payments due to or promises made to the employee; descriptions of reporting relationships, past experience, responsibilities, and training and educational histories; lists of all certifications; and all job performance evaluations.  If CPI is barred by any applicable laws from providing any of this information, within ten (10) business days following receipt of the request, CPI must provide the requested information to the full extent permitted by law and also must provide a written explanation of CPI's inability to provide the remaining information.

3.    At the request of Acquirer, CPI must promptly make Relevant Personnel available for private interviews with Acquirer during normal business hours at a mutually agreeable location or via teleconference or videoconference.

4.    Defendants must not interfere with any efforts by Acquirer to employ any Relevant Personnel.  Interference includes but is not limited to offering to increase the salary or improve the benefits of Relevant Personnel unless the offer is part of a company-wide increase in salary or benefits that was announced prior to August 5, 2019.  Defendants' obligations under

this paragraph will expire six (6) months after the divestiture of the Divestiture Assets pursuant to this Final Judgment.

5.      For Relevant Personnel who elect employment with Acquirer within six (6) months of the date on which the Divestiture Assets are divested to Acquirer, CPI must waive all non-compete and non-disclosure agreements, vest all unvested pension and other equity rights, and provide all benefits that those Relevant Personnel otherwise would have been provided had the Relevant Personnel continued employment with CPI, including but not limited to any retention bonuses or payments CPI may maintain reasonable restrictions on disclosure by Relevant Personnel of CPI's proprietary non-public information that is unrelated to ASC Signal and not otherwise required to be disclosed by this Final Judgment.

6.      For a period of twelve (12) months from the date on which the Divestiture Assets are divested to Acquirer, Defendants may not solicit to hire Relevant Personnel who were hired by Acquirer within six (6) months of the date on which the Divestiture Assets are divested to Acquirer unless (a) an individual is terminated or laid off by Acquirer or (b) Acquirer agrees in writing that Defendants may solicit to hire that individual.  Nothing in this paragraph prohibits Defendants from advertising employment openings using general solicitations or advertisements.

D.      CPI must permit prospective Acquirers of the Divestiture Assets to have reasonable access to make inspections of the physical facilities and access to all environmental, zoning, and other permit documents and information, and all financial, operational, or other documents and information customarily provided as part of a due diligence process.

E.      CPI must warrant to Acquirer that each asset to be divested will be fully operational and without material defect on the date of sale.

8

F.      Defendants must not take any action that will impede in any way the permitting, operation, or divestiture of the Divestiture Assets.

G.      CPI must assign, subcontract, or otherwise transfer all contracts, agreements, and relationships related to the Divestiture Assets, including all supply and sales contracts, to Acquirer, *provided however,* that for any contracts or agreements that require the consent of another party to sign, subcontract, or otherwise transfer, CPI must use best efforts to accomplish this assignment, subcontracting or other transfer.  Defendants must not interfere with any negotiations between Acquirer and a contracting party.

H.      At the option of Acquirer, and subject to approval by the United States in its sole discretion, on or before the date on which the Divestiture Assets are divested to Acquirer, CPI must enter into a contract to provide transition services for back office, human resource, and information technology services and support for ASC Signal for a period of up to twelve (12) months on terms and conditions reasonably related to market conditions for the provision of the transition services.  The United States, in its sole discretion, may approve one or more extensions of this contract for transition services, for a total of up to an additional six (6) months.  If Acquirer seeks an extension of the term of this contract for transition services, CPI must notify the United States in writing at least three (3) months prior to the date the contract expires. Acquirer may terminate a contract for transition services without cost or penalty at any time upon commercially reasonable notice.  The employee(s) of CPI tasked with providing these transition services must not share any competitively sensitive information of Acquirer with any other employee of CPI.

I.      CPI must warrant to Acquirer that there are no material defects in the environmental, zoning, or other permits pertaining to the operation of the Divestiture Assets.

Following the sale of the Divestiture Assets, Defendants must not undertake, directly or indirectly, any challenges to the environmental, zoning, or other permits relating to the operation of the Divestiture Assets.

J.       Unless the United States otherwise consents in writing, the divestiture pursuant to Section IV or by a Divestiture Trustee appointed pursuant to Section V of this Final Judgment must include the entire Divestiture Assets, and must be accomplished in such a way as to satisfy the United States, in its sole discretion, that the Divestiture Assets can and will be used by Acquirer as part of a viable, ongoing business of the design, manufacture, and sale of large ground station antennas for geostationary satellites, and will remedy the competitive harm alleged in the Complaint.  The divestiture, whether pursuant to Section IV or Section V of this Final Judgment,

(1)     must be made to an Acquirer that, in the United States' sole judgment, has the intent and capability (including the necessary managerial, operational, technical, and financial capability) of competing effectively in the business of the design, manufacture, and sale of large ground station antennas for geostationary satellites; and

(2)     must be accomplished so as to satisfy the United States, in its sole discretion, that none of the terms of any agreement between an Acquirer and CPI give CPI the ability unreasonably to raise Acquirer's costs, to lower Acquirer's efficiency, or otherwise to interfere in the ability of Acquirer to compete effectively.

K.       If any term of an agreement between CPI and Acquirer to effectuate the divestiture required by this Final Judgment varies from a term of this Final Judgment then, to the extent that CPI cannot fully comply with both, this Final Judgment determines CPI's obligations.

## V.   <u>APPOINTMENT OF DIVESTITURE TRUSTEE</u>

A.      If CPI has not divested the Divestiture Assets within the period specified in Paragraph IV(A), CPI must immediately notify the United States of that fact in writing.  Upon application of the United States, the Court will appoint a Divestiture Trustee selected by the United States and approved by the Court to effect the divestiture of the Divestiture Assets.

B.      After the appointment of a Divestiture Trustee by the Court, only the Divestiture Trustee will have the right to sell the Divestiture Assets.  The Divestiture Trustee will have the power and authority to accomplish the divestiture to an Acquirer acceptable to the United States, in its sole discretion, at a price and on terms as are then obtainable upon reasonable effort by the Divestiture Trustee, subject to the provisions of Sections IV, V, and VI of this Final Judgment, and will have other powers as the Court deems appropriate.  Subject to Paragraph V(D) of this Final Judgment, the Divestiture Trustee may hire at the cost and expense of CPI any agents or consultants, including, but not limited to, investment bankers, attorneys, and accountants, who will be solely accountable to the Divestiture Trustee, reasonably necessary in the Divestiture Trustee's judgment to assist in the divestiture.  Any such agents or consultants will serve on such terms and conditions as the United States approves, including confidentiality requirements and conflict of interest certifications.

C.      Defendants may not object to a sale by the Divestiture Trustee on any ground other than malfeasance by the Divestiture Trustee.  Objections by Defendants must be conveyed in writing to the United States and the Divestiture Trustee within ten (10) calendar days after the Divestiture Trustee has provided the notice required under Section VI.

D.      The Divestiture Trustee will serve at the cost and expense of CPI pursuant to a written agreement, on such terms and conditions as the United States approves, including

confidentiality requirements and conflict of interest certifications.  The Divestiture Trustee will account for all monies derived from the sale of the assets sold by the Divestiture Trustee and all costs and expenses so incurred.  After approval by the Court of the Divestiture Trustee's accounting, including fees for any of its services yet unpaid and those of any agents and consultants retained by the Divestiture Trustee, all remaining money will be paid to CPI and the trust will then be terminated.  The compensation of the Divestiture Trustee and any agents or consultants retained by the Divestiture Trustee must be reasonable in light of the value of the Divestiture Assets and based on a fee arrangement that provides the Divestiture Trustee with incentives based on the price and terms of the divestiture and the speed with which it is accomplished, but the timeliness of the divestiture is paramount.  If the Divestiture Trustee and CPI are unable to reach agreement on the Divestiture Trustee's or any agents' or consultants' compensation or other terms and conditions of engagement within fourteen (14) calendar days of the appointment of the Divestiture Trustee, the United States may, in its sole discretion, take appropriate action, including making a recommendation to the Court.  Within three (3) business days of hiring any agent or consultant, the Divestiture Trustee must provide written notice of the hiring and rate of compensation to CPI and the United States.

      E.      CPI must use its best efforts to assist the Divestiture Trustee in accomplishing the required divestiture.  The Divestiture Trustee and any agents or consultants retained by the Divestiture Trustee must have full and complete access to the personnel, books, records, and facilities of the business to be divested, and CPI must provide or develop financial and other information relevant to such business as the Divestiture Trustee may reasonably request, subject to reasonable protection for trade secrets; other confidential research, development, or

commercial information; or any applicable privileges.  Defendants may not take any action to interfere with or impede the Divestiture Trustee's accomplishment of the divestiture.

F.      After appointment, the Divestiture Trustee will file monthly reports with the United States setting forth the Divestiture Trustee's efforts to accomplish the divestiture ordered by this Final Judgment.  Reports must include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets and will describe in detail each contact with any such person.  The Divestiture Trustee will maintain full records of all efforts made to divest the Divestiture Assets.

G.      If the Divestiture Trustee has not accomplished the divestiture ordered by this Final Judgment within six months of appointment, the Divestiture Trustee must promptly file with the Court a report setting forth:  (1) the Divestiture Trustee's efforts to accomplish the required divestiture; (2) the reasons, in the Divestiture Trustee's judgment, why the required divestiture has not been accomplished; and (3) the Divestiture Trustee's recommendations.  To the extent such report contains information that the Divestiture Trustee deems confidential, such report will not be filed in the public docket of the Court.  The Divestiture Trustee will at the same time furnish such report to the United States, which will have the right to make additional recommendations to the Court consistent with the purpose of the trust.  The Court thereafter may enter such orders as it deems appropriate to carry out the purpose of this Final Judgment, which, if necessary, may include extending the trust and the term of the Divestiture Trustee's appointment by a period requested by the United States.

H.      If the United States determines that the Divestiture Trustee is not acting diligently or in a reasonably cost-effective manner, the United States may recommend that the Court appoint a substitute Divestiture Trustee.

## VI.    NOTICE OF PROPOSED DIVESTITURE

A.      Within two (2) business days following execution of a definitive divestiture agreement, CPI or the Divestiture Trustee, whichever is then responsible for effecting the divestiture required herein, must notify the United States of a proposed divestiture required by this Final Judgment.  If the Divestiture Trustee is responsible for effecting the divestiture, the Divestiture Trustee also must notify Defendants.  The notice must set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets, together with full details of the same.

B.      Within fifteen (15) calendar days of receipt by the United States of this notice, the United States may request from Defendants, the proposed Acquirer, other third parties, or the Divestiture Trustee, if applicable, additional information concerning the proposed divestiture, the proposed Acquirer and other prospective Acquirers.  Defendants and the Divestiture Trustee must furnish the additional information requested within fifteen (15) calendar days of the receipt of the request, unless the United States provides written agreement to a different period.

C.      Within forty-five (45) calendar days after receipt of the notice or within twenty (20) calendar days after the United States has been provided the additional information requested from Defendants, the proposed Acquirer, other third parties, and the Divestiture Trustee, whichever is later, the United States must provide written notice to Defendants and the Divestiture Trustee, if there is one, stating whether or not the United States, in its sole discretion,

14

objects to the proposed Acquirer or any other aspect of the proposed divestiture.  If the United

States provides written notice that it does not object, the divestiture may be consummated,

subject only to Defendants' limited right to object to the sale under Paragraph V(C) of this Final

Judgment.  Absent written notice that the United States does not object or upon objection by the

United States, a divestiture may not be consummated.  Upon objection by Defendants pursuant to

Paragraph V(C), a divestiture by the Divestiture Trustee may not be consummated unless

approved by the Court.

> D.      No information or documents obtained pursuant to Section VI may be divulged by

the United States to any person other than an authorized representative of the executive branch of

the United States, except in the course of legal proceedings to which the United States is a party

(including grand-jury proceedings), for the purpose of evaluating a proposed Acquirer or

securing compliance with this Final Judgment, or as otherwise required by law.

> E.      In the event of a request by a third party for disclosure of information under the

Freedom of Information Act, 5 U.S.C. § 552, the Antitrust Division will act in accordance with

that statute, and the Department of Justice regulations at 28 C.F.R. part 16, including the

provision on confidential commercial information, at 28 C.F.R. § 16.7.  Persons submitting

information to the Antitrust Division should designate the confidential commercial information

portions of all applicable documents and information under 28 C.F.R. § 16.7.  Designations of

confidentiality expire ten years after submission, "unless the submitter requests and provides

justification for a longer designation period."  *See* 28 C.F.R. § 16.7(b).

> F.      If at the time a person furnishes information or documents to the United States

pursuant to Section VI, that person represents and identifies in writing information or documents

for which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of

Civil Procedure, and marks each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," the United States must give that person ten calendar days' notice before divulging the material in any legal proceeding (other than a grand-jury proceeding).

## VII.     FINANCING

Defendants may not finance all or any part of Acquirer's purchase of all or part of the Divestiture Assets made pursuant to this Final Judgment.

## VIII.     HOLD SEPARATE

Until the divestiture required by this Final Judgment has been accomplished, Defendants must take all steps necessary to comply with the Hold Separate Stipulation and Order entered by the Court.  Defendants will take no action that would jeopardize the divestiture ordered by the Court.

## IX.     AFFIDAVITS

A.     Within twenty (20) calendar days of the filing of the Complaint in this matter, and every thirty (30) calendar days thereafter until the divestiture required by this Final Judgment has been completed, Defendants must deliver to the United States an affidavit describing the fact and manner of Defendants' compliance with this Final Judgment.  Odyssey's affidavits must be signed by the Vice Chairman and a Managing Principal of Odyssey Investment Partners; CPI's affidavits must be signed by its Chief Financial Officer and its highest-ranking officer; and General Dynamics's affidavits must be signed by General Dynamics Mission Systems' President and General Counsel.  The United States, in its sole discretion, may approve different signatories for each affidavit.  Each affidavit must include the name, address, and telephone number of each person who, during the preceding thirty (30) calendar days, made an offer to acquire, expressed

an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, an interest in the Divestiture Assets, and must describe in detail each contact with such persons during that period.  Each affidavit also must include a description of the efforts Defendants have taken to solicit buyers for and complete the sale of the Divestiture Assets, and to provide required information to prospective Acquirers.  Each affidavit also must include a description of any limitations placed by Defendants on information provided to prospective Acquirers.  If the information set forth in the affidavit is true and complete, objection by the United States to information provided by Defendants to prospective Acquirers must be made within fourteen (14) calendar days of receipt of the affidavit.

B.      Within twenty (20) calendar days of the filing of the Complaint in this matter, Defendants must deliver to the United States an affidavit that describes in reasonable detail all actions Defendants have taken and all steps Defendants have implemented on an ongoing basis to comply with Section VIII of this Final Judgment.  Defendants must deliver to the United States an affidavit describing any changes to the efforts and actions outlined in Defendants' earlier affidavits filed pursuant to Section IX within fifteen (15) calendar days after the change is implemented.

C.      CPI must keep all records of all efforts made to preserve and divest the Divestiture Assets until one year after the divestiture has been completed.

## X.      COMPLIANCE INSPECTION

A.      For the purposes of determining or securing compliance with this Final Judgment, or of related orders such as a Hold Separate Stipulation and Order or of determining whether this Final Judgment should be modified or vacated, and subject to any legally-recognized privilege, from time to time authorized representatives of the United States, including agents retained by

the United States, must, upon written request of an authorized representative of the Assistant

Attorney General in charge of the Antitrust Division, and reasonable notice to Defendants, be

permitted:

> (1)   access during Defendants' office hours to inspect and copy, or at the option
>        of the United States, to require Defendants to provide electronic copies of
>        all books, ledgers, accounts, records, data, and documents in the
>        possession, custody, or control of Defendants, relating to any matters
>        contained in this Final Judgment; and
>
> (2)   to interview, either informally or on the record, Defendants' officers,
>        employees, or agents, who may have their individual counsel present,
>        regarding such matters.  The interviews must be subject to the reasonable
>        convenience of the interviewee and without restraint or interference by
>        Defendants.

B.       Upon the written request of an authorized representative of the Assistant Attorney

General in charge of the Antitrust Division, Defendants must submit written reports or respond

to written interrogatories, under oath if requested, relating to any of the matters contained in this

Final Judgment.

C.       No information or documents obtained pursuant to Section X may be divulged by

the United States to any person other than an authorized representative of the executive branch of

the United States, except in the course of legal proceedings to which the United States is a party

(including grand jury proceedings), for the purpose of securing compliance with this Final

Judgment, or as otherwise required by law.

D.       In the event of a request by a third party for disclosure of information under the

Freedom of Information Act, 5 U.S.C. § 552, the Antitrust Division will act in accordance with

that statute, and the Department of Justice regulations at 28 C.F.R. part 16, including the

provision on confidential commercial information, at 28 C.F.R. § 16.7.  Defendants submitting

information to the Antitrust Division should designate the confidential commercial information

portions of all applicable documents and information under 28 C.F.R. § 16.7.  Designations of

confidentiality expire ten years after submission, "unless the submitter requests and provides

justification for a longer designation period."  *See* 28 C.F.R. § 16.7(b).

E.      If at the time that Defendants furnish information or documents to the United

States pursuant to Section X, Defendants represent and identify in writing information or

documents for which a claim of protection may be asserted under Rule 26(c)(1)(G) of the

Federal Rules of Civil Procedure, and Defendants mark each pertinent page of such material,

"Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure,"

the United States must give Defendants ten (10) calendar days' notice before divulging the

material in any legal proceeding (other than a grand jury proceeding).

## XI.    NOTIFICATION

A.      Unless a transaction is otherwise subject to the reporting and waiting period

requirements of the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, 15

U.S.C. § 18a (the "HSR Act"), Odyssey and CPI, without providing advance notification to the

United States, may not directly or indirectly acquire any assets of or any interest in, including a

financial, security, loan, equity, or management interest, an entity involved in the design,

manufacture, and sale of large ground station antennas for geostationary satellites in the United

States during the term of this Final Judgment.

B.       Odyssey and CPI must provide the notification required by Section XI in the

same format as, and in accordance with the instructions relating to, the Notification and Report

Form set forth in the Appendix to Part 803 of Title 16 of the Code of Federal Regulations as

amended, except that the information requested in Items 5 through 8 of the instructions must be

provided only about the design, manufacture, and sale of large ground station antennas for

geostationary satellites.  Notification must be provided at least thirty (30) calendar days before acquiring any such interest, and must include, beyond the information required by the instructions, the names of the principal representatives who negotiated the agreement on behalf of each party, and all management or strategic plans discussing the proposed transaction.  If, within the 30-day period following notification, representatives of the United States make a written request for additional information, Odyssey and CPI may not consummate the proposed transaction or agreement until thirty (30) calendar days after submitting all requested information.  Early termination of the waiting periods in this Paragraph may be requested and, where appropriate, granted in the same manner as is applicable under the requirements and provisions of the HSR Act and rules promulgated thereunder.  Section XI will be broadly construed and any ambiguity or uncertainty regarding the filing of notice under Section XI will be resolved in favor of filing notice.

C.      Paragraphs XI(A) and XI(B) will only apply to Odyssey to the extent it continues to hold an interest in CPI.

## XII.      LIMITATIONS ON REACQUISITION

Odyssey and CPI may not reacquire any part of or any interest in the Divestiture Assets during the term of this Final Judgment

## XIII.      RETENTION OF JURISDICTION

The Court retains jurisdiction to enable any party to this Final Judgment to apply to the Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XIV.    <u>ENFORCEMENT OF FINAL JUDGMENT</u>

A.      The United States retains and reserves all rights to enforce the provisions of this
Final Judgment, including the right to seek an order of contempt from the Court.  Defendants
agree that in a civil contempt action, a motion to show cause, or a similar action brought by the
United States regarding an alleged violation of this Final Judgment, the United States may
establish a violation of this Final Judgment and the appropriateness of a remedy therefor by a
preponderance of the evidence, and Defendants waive any argument that a different standard of
proof should apply.

B.      This Final Judgment should be interpreted to give full effect to the procompetitive
purposes of the antitrust laws and to restore the competition the United States alleged was
harmed by the challenged conduct.  Defendants agree that they may be held in contempt of, and
that the Court may enforce, any provision of this Final Judgment that, as interpreted by the Court
in light of these procompetitive principles and applying ordinary tools of interpretation, is stated
specifically and in reasonable detail, whether or not it is clear and unambiguous on its face.  In
any such interpretation, the terms of this Final Judgment should not be construed against either
party as the drafter.

C.      In an enforcement proceeding in which the Court finds that Defendants have
violated this Final Judgment, the United States may apply to the Court for a one-time extension
of this Final Judgment, together with other relief that may be appropriate.  In connection with a
successful effort by the United States to enforce this Final Judgment against a Defendant,
whether litigated or resolved before litigation, that Defendant agrees to reimburse the United
States for the fees and expenses of its attorneys, as well as all other costs including experts' fees,

incurred in connection with that enforcement effort, including in the investigation of the potential violation.

D.      For a period of four (4) years following the expiration of this Final Judgment, if the United States has evidence that a Defendant violated this Final Judgment before it expired, the United States may file an action against that Defendant in this Court requesting that the Court order:  (1) Defendant to comply with the terms of this Final Judgment for an additional term of at least four years following the filing of the enforcement action; (2) all appropriate contempt remedies; (3) additional relief needed to ensure the Defendant complies with the terms of this Final Judgment; and (4) fees or expenses as called for by Section XIV.

## XV.      <u>EXPIRATION OF FINAL JUDGMENT</u>

Unless the Court grants an extension, this Final Judgment will expire ten (10) years from the date of its entry, except that after five (5) years from the date of its entry, this Final Judgment may be terminated upon notice by the United States to the Court and Defendants that the divestiture has been completed and the continuation of this Final Judgment no longer is necessary or in the public interest.

## XVI.      <u>PUBLIC INTEREST DETERMINATION</u>

Entry of this Final Judgment is in the public interest. The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including by making available to the public copies of this Final Judgment, the Competitive Impact Statement, comments thereon, and the United States' responses to comments.  Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and responses to comments filed with the Court, entry of this Final Judgment is in the public interest.

Date: ___09/10/2020_____

_____

United States District Judge